REED BROTHERS v. NICHOLSON et al.,
Appellants.

Division One, June 15, 1905.

1. **HOMESTEAD: Mortgage.** Where the homestead does not exceed 160 acres, and is mortgaged, the amount of the mortgage must be deducted from the total value of the land, and the homesteader allowed a homestead to the value of not exceeding $1,500 in what remains of the total value of the land after the mortgage is deducted.

2. ———: ———: **Execution: Creditors.** That homestead to the statutory value is exempt from attachment and execution. And if the land belonged to the husband a conveyance to his wife cannot be regarded as fraudulent in law, for not being subject to attachment or execution, it is beyond the reach of the husband's creditors.

3. ———: ———: **Sale: Creditors' Right.** Where the husband has conveyed his mortgaged homestead to his wife, the court cannot, at the suit of his creditors, order the property sold subject to the mortgage and $1,500 received at the sale turned over to the husband and the balance to his creditors, for two reasons: First, the deed to the wife of the homestead is valid as against the husband's creditors, and she is entitled thereto and to the proceeds of any sale thereunder; second, she is entitled to select the particular part of the land, of the value of $1,500, which she would retain as a homestead.

4. ———: **Sale: Equitable Proceeding.** The fact that the proceeding is one in equity does not change the statutory right of the homesteader to choose and designate the part of the land which shall be exempt from execution and to have appraisers appointed to set it off; nor does it authorize a court of chancery to order the whole land sold and the homestead exemption to be turned over to the homesteader in cash instead of land.

5. ———: ———: **Wife's Money: Setting Off Homestead.** Where a part of the money which purchased the land was the wife's money received by her after the enactment of the Married Woman's Act of 1875, and a suit is brought by the husband's creditors to set aside a conveyance by the husband to her, the homesteader must first be permitted to designate the part of the land of the statutory value that he will retain, and the balance may be sold, and out of the proceeds the amount of her separate money that was used in the purchase of the land, should be paid to her, and then out of the balance his creditors may be paid.

6. **WIFE'S MONEY: Converted By Husband: Resulting Trust.** Where a wife received land and personal property from her father's estate prior to the passage of the Married Woman's Act of 1875, and they were sold, and the money turned over to her and kept by her until it was invested in land, by her husband, who took the title in his own name, and afterwards conveyed it to her, it cannot be held that he had reduced the money to his possession and that the land was his.

Appeal from Lawrence Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED AND REMANDED.

*Henry Brumback* and *Gibbs & Henson* for appellants.

(1) The wife is entitled to hold the title to the land under the conveyance to her by her husband, exempt from liability under the judgment of the plaintiffs against him. (2) A husband may so acquire possession of his wife's property and so manage and hold the same as to exclude his common-law marital rights and show that he took the possession, not for himself by virtue of his marital rights, but as trustee or agent for his wife. Hammons v. Renfrow, 84 Mo. 342; Clark v. Clark, 86 Mo. 123; Kinealy v. Macklin, 89 Mo. 442. (3) Unless the husband received the property solely in the exercise of his marital rights and for the purpose of appropriating it to his own use, in equity, the mere reception of the property by the husband is not such a reduction of it to possession by him as to defeat the

equitable rights of the wife.  Tennison v. Tennison, 46 Mo. 82.  (4)  Where the property of the wife has been reduced by the husband to his possession and invested in land and title taken in his own name, before the Married Woman's Act of 1875, there is good consideration for a conveyance by the husband to the wife of such real estate, to make restitution of property which rightfully belongs to the wife.  Scrutchfield v. Sauter, 119 Mo. 615.  (5)  When the husband invests money of the wife, her separate property under the statute, in land, with her knowledge and assent, but without such assent authorizing him to do so being manifested in writing, and he takes the legal title in his own name, he holds such title in trust for the wife and her heirs.  Jones v. Elkins, 143 Mo. 651; Seay v. Hesse, 123 Mo. 456; Broughton v. Brand, 94 Mo. 169.  Or, as to such separate property which comes into his hands, the wife may treat the husband as debtor.  Seay v. Hesse, 123 Mo. 462.  And may sue for and recover such amount from his administrator.  Winn v. Riley, 151 Mo. 61.  Or, as to such separate property of the wife, when invested in land without her written assent and title is taken in entirety, upon the death of wife, he will be trustee of the wife's heirs for the proportionate part of such real estate as the amount of her separate estate which goes into its purchase, bears to the whole consideration.  Jones v. Elkins, supra; Bank v. Winn, 132 Mo. 80; McLeod v. Venable, 163 Mo. 536.

*Joseph M. McPherson* and *William B. Skinner* for respondents.

(1)  Where a court of equity takes jurisdiction of the subject-matter in controversy, it may retain such jurisdiction to make a complete disposition of the case, and adjust all the equities therein.  Keeton v. Spalding, 13 Mo. 321; Jordan v. Harrison, 46 Mo. App. 172; Wood v. Mastin, 106 Mo. 324; Reyburn v. Mitchell, 106

Mo. 365; Corby v. Bean, 44 Mo. 379; Morrison v. Herrington, 120 Mo. 665. A court of equity may set aside a deed made in fraud of creditors at the instance of the judgment creditor and order the lands sold to satisfy the judgment and adjust all the equities in the same decree. Lionberger v. Baker, 88 Mo. 447; Knoop v. Kelsey, 121 Mo. 648; Good v. Merkowitz Bros. & Straus, 35 Mo. App. 661; Wood v. Mastin, 106 Mo. 324; Balz v. Nelson, 171 Mo. 682. (2) To render a voluntary conveyance by a husband to his wife valid as against prior creditors, the burden of proof is on the grantee to show that the debtor retained sufficient property to pay his debts. Hoffman v. Nolte, 127 Mo. 120. (3) This case must be determined by the law as it existed prior to the Married Woman's Act of 1875, and for this reason the cases cited by the appellants are not in point. Defendants were married in Greene county, Missouri, on July 26, 1866. (4) Where an insolvent judgment debtor conveys land to his wife, it will be presumed, in the absence of evidence to the contrary, that the husband furnished the consideration for the deed to his wife, and in such case the deed is fraudulent as to the judgment creditor without any showing of actual fraud. Hoffman v. Nolte, supra; Patton v. Bragg, 113 Mo. 595; Fehlig v. Busch, 165 Mo. 167; Halstead v. Mustion, 166 Mo. 495; Glacier v. Walker, 69 Mo. App. 291; Bump on Fraudulent Conveyances, 286, 277. (5) The husband by marriage acquires an absolute right to all the personal property in possession belonging to the wife, and all subsequent acquisitions by his wife of choses in possession vest absolutely in him, unless such acquisitions be given to her or to him for her sole and separate use, and the evidence of such gift must be clear and unequivocal. Woodford v. Stephens, 51 Mo. 447; Kidwell v. Kirkpatrick, 70 Mo. 214; Burns v. Bangert, 16 Mo. App. 35; Bank v. Winn, 132 Mo. 80; Curd v. Brown, 148 Mo. 82.

MARSHALL, J.—This is a bill in equity to set aside a deed made by the defendant, R. D. O. Nicholson, to his wife, Nancy E. Nicholson, on the 27th of March, 1896, conveying to her the southwest quarter of the southeast quarter of section 26, township 29, range 25, and the west half of the northeast quarter, and the southeast quarter of the northwest quarter of section 35, same township and range, in Lawrence county, Missouri, on the ground that it was made to defraud the creditors of the husband, the plaintiff among the number.

The circuit court entered a decree in favor of the plaintiff, and the defendants appealed.

The case made is this:

On the 16th of October, 1895, the husband executed his note for $360, to one J. A. Fretwell or bearer, payable at six months, the consideration being the right granted to him to sell in Greene county, Missouri, a certain patented bed brace. The note was not paid, but before maturity had passed into the hands of the plaintiff herein, who, on the 7th of July, 1896, instituted suit against the husband thereon, which resulted in a judgment in favor of the plaintiff, on the 28th of August, 1896, for $381.60. In the meantime the husband had made this deed, here sought to be set aside, to his wife, and after the return of the execution *nulla bona,* the plaintiff instituted this suit to set the same aside on the ground that it was fraudulent as to the husband's creditors.

Upon the trial of this case, the plaintiff introduced the deed in question, and the records and files in the case of the plaintiff against the husband on the note aforesaid, together with the execution and the return thereon.

The plaintiff then called the defendant, Nicholson, the husband, and had him identify a statement sworn to by him before appraisers who had been selected by the sheriff to appraise and set apart to him such prop-

erty as was exempt under the law, in which he stated that he had no property at all. Thereupon the plaintiff rested. The defendants then called R. D. O. Nicholson, the husband, who testified that he married the defendant Nancy on the 29th of July, 1866; that when they were married his wife's father deeded eighty acres of land in Greene county to her (on cross-examination he stated that the deed was made to himself and his wife jointly), and that her father also gave her a mare, ten hogs, eight head of sheep, a cow and a calf; that they afterwards sold the eighty acres of land in Greene county for $800, and her father having died, she received from his estate $450, and, later, personal property to the value of $200; that she sold some of the personal property for $40; that with the proceeds of such sale, to-wit, $800 for the land, $450 received from her father's estate, the $200 worth of personal property, the sale of the mare for $130, and $500 realized from the sale of a wagon and team of mules, together with what had been earned on the farm, they purchased 120 acres in Lawrence county, and 80 acres in Greene county for $2,500 or $2,600, paying thereon $2,000; that there was a vendor's lien on the land for $500 or $600, which was afterwards discovered, in consequence of which the purchase was rescinded, and they received back nearly all the money they had paid therefor; that afterwards, in 1874, they purchased 120 acres, being the west half of the northeast quarter of section 35 and the southwest quarter of the northwest quarter of section 35 in Lawrence county, a part of the land here in controversy, and paid therefor $2,600; that they afterwards purchased 40 acres additional from the railroad, being the northwest quarter of the southeast quarter of section 26; that he took the deeds to the land in his own name; that his wife had always kept the money, keeping it some times in her bosom, and at other times, in other places, but that he generally

Vol 189 mo—26

conducted the trades; that at the time of his marriage he had no property at all, except a horse, a saddle and a bridle, and had acquired none thereafter, except such as was made from farming the land. Immediately upon acquiring the land in 1874, being the land in question here, he and his wife moved on to the same, occupied it and used it as a homestead and have continued so to do ever since.

The house is located on the northwest quarter of the northeast quarter of section 35. The total land consists of 160 acres.

The husband testified that he had never reduced the wife's money or property to his possession, but that when it was invested in the land, the title was taken in his name, and the understanding between him and his wife was, that she should have her money or the land at any time she saw fit. The consideration expressed in the deed from the husband to the wife, here sought to be set aside, was $4,500. The defendant husband testified that he figured up the amount of money which belonged to his wife, and which had gone into the purchase of the land, added 8 per cent interest thereto, and that it aggregated $4,800, and that, in order to make that sum good to her, he conveyed the land to her, at a valuation of $4,500, and turned over to her, personal property, consisting of cattle, mules, etc., to the value of $300. He testified that the land is worth seventeen to eighteen dollars an acre, and it was shown that there is a valid deed of trust on the land for $1,400.

The defendants called two other witnesses, one of whom said that the land was worth $17.50 an acre, aggregating $2,800, and the other said it was worth $20 an acre, aggregating $3,200. In rebuttal the plaintiff called four witnesses, three of whom said the land was worth $25 an acre, aggregating $4,000, and one of them said it was worth $30 an acre, aggregating $4,800. It was further shown that the land lies a quarter of a mile

south of the road on the north, and a mile north of the road on the south.

The trial court found that the conveyance from the husband to the wife was fraudulent, and set the same aside. The court further found that the defendant husband is entitled to a homestead in the premises, to the value of $1,500, and that the wife is entitled to the sum of $450, which she received as a gift from her mother in 1895, and which had never been reduced to possession by the husband with the written consent of the wife, and further found that there was a valid deed of trust on the 120 acres which lie in section 35, for $1,400, with interest at 6 per cent thereon. The court thereupon ordered that the land be sold, subject to said deed of trust, and that out of the proceeds there be first paid to the wife the sum of $450 and then to the husband $1,500 as his homestead interest in the premises, and out of the balance, if any, there be paid the costs and the plaintiff's judgment. The court further ordered that unless the premises should bring the sum of $1,500, the homestead interest of the husband, subject to the deed of trust as aforesaid, then the premises, or any part thereof, should not be sold.

After proper steps the defendants appealed.

I.

It is a conceded fact, which was also found to be a fact by the trial court, that the land in controversy constituted the homestead of the defendants. The total tract does not exceed 160 acres. There was a conflict in the evidence as to the value of the land. The defendant husband and his witnesses valued it at less than $2,900. There is a valid mortgage, covering 120 of the 160 acres, and embracing the part on which the house stands, for $1,400. The husband, as the head of the family, was entitled to a homestead in the equity of redemption of the land; that is, he was entitled, under section 3616, Revised Statutes 1899, to a homestead, not

to exceed 160 acres in area or to exceed a total value of $1,500. The value must be taken out of the excess over the mortgage; that is, the amount of the mortgage must be first deducted from the total value of the land, and the homesteader allowed a homestead to the value of not exceeding $1,500 in what remains of the total value after the mortgage is deducted. Such homestead is exempt from attachment and execution under the section of the statute quoted. Upon the theory, then, that the land was the land of the husband, and that the wife had no interest in it, the conveyance to the wife cannot be regarded as fraudulent in law, for, not being subject to attachment or execution, it was beyond the reach of the creditors of the husband. Any conveyance thereof could in no sense hinder, delay or defraud the creditors. [Bank of Versailles v. Guthrey, 127 Mo. l. c. 195; Rose v. Smith, 167 Mo. l. c. 86; Balz v. Nelson, 171 Mo. l. c. 690.]

The only matter then of importance upon the issues joined under this view of the case, is, whether the land was worth more than $1,500 in excess of the mortgage on the same. There was a conflict in the testimony as to value. The trial court ordered the land to be sold and $1,500 in money to be turned over to the husband in lieu of the homestead. That decree was erroneous for two reasons: First, because the husband had conveyed his homestead interest to his wife and she was entitled thereto, and to the proceeds of any sale thereof. The deed of the husband to the wife of a homestead is valid even as against the husband's creditors. Second, the wife was entitled to select the particular part of the land, of the value of $1,500, which she would retain as a homestead. Section 3617, Revised Statutes 1899, confers the right upon the homesteader to designate and choose the part of the land which shall be exempt from execution under section 3616, and the statute makes it the duty of the sheriff upon such designation or choice being made, or upon a refusal to make the same, to ap-

point three disinterested appraisers to value and set apart the homestead, and then to levy the execution upon the residue of the real estate, and this court has announced the rule that any sale by a sheriff, where these prerequisites of the statute have not been observed, is void.

The fact that this is a proceeding in equity does not change the rights of the homesteader as above defined in any respect, and does not authorize a court of chancery to order the whole land sold and the homestead exemption to be turned over to the homesteader in cash instead of land.

Counsel for plaintiff realize this rule, for they say that the order of sale was proper because it was impossible to set out the homestead in kind. In this, however, counsel are manifestly in error, for the land consists of 160 acres. The house is located on one of the forties. It is, therefore, not only possible but absolutely certain that the homesteader could designate and choose lands of the value of $1,500 exclusive of the mortgage out of the 160-acre tract, and it is equally clear that the commissioners could set apart to the homesteader such a homestead in kind.

The trial court, therefore, was in error in ordering the land sold. Even courts of equity are bound by the homestead laws of this State, and cannot order the homestead interest paid to the homesteader in cash instead of allowing him to designate the particular piece of the land he will hold as such homestead.

The judgment of the lower court must, therefore, be reversed for this reason.

## II.

The defendants contend that the land in question rightfully belonged to the wife because her money bought the same, and that the conveyance of the husband to the wife was simply placing the title where it should have been put in the first place.

The plaintiff contends that when the land that was given to the wife by her father was converted into cash, and when the property she received from her father's estate was converted into cash, and when such cash was reduced to possession by the husband prior to the enactment of the Married Woman's act of 1875, the cash became the property of the husband by virtue of his marital relations, and, therefore, the property purchased with such cash was the property of the husband, and was subject to his debts. As to the $450 received by the wife as a gift from her mother after the passage of the Married Woman's act, and not reduced to the possession of the husband by the written consent of the wife, but by the husband invested in the land and the improvement thereof, the plaintiff concedes that the wife is entitled thereto.

These considerations, however, under the issues joined, become important only in the event that it should be ascertained that the land exceeded $1,500 in value, over and above the mortgage. This fact could only be ascertained by commissioners appointed to value the land, and to set apart the specific land selected by the homesteader as a homestead. The statutes do not confer power upon a court, even a court of equity, to determine that question. In such a case as this, the power of a court of equity is limited to a finding that the money which purchased the land was the money of the husband and not of the wife, and upon such a finding, where the land is occupied as a homestead, the court is limited in its decree to directing the sheriff to give the homesteader the right to select the particular land he desires to hold as a homestead, and to appoint commissioners to value and set apart the same to him, and thereafter, if there is any land in excess of area or value of the statutory homestead exemption, to direct the sheriff to sell the same, and in that event, out of the proceeds to pay the wife the $450, which was her separate property, and to apply the balance to the

payment of the plaintiff's judgment against the husband.

Upon the question whether the money with which this land was purchased, was the money of the husband or of the wife, there is no conflict whatever in the evidence. The uncontradicted evidence is that the husband had no means whatever, except a horse, a saddle and a bridle. All the other money, which was employed to purchase the land, was money which the wife received from her father and her mother, as gifts, or was derived as an inheritance from her father's estate. All of it, except $450, was so received and derived prior to the passage of the Married Woman's act of 1875. At common law the husband was entitled to the choses in action of the wife, but it was necessary for him to reduce them to his possession. Whether he had so reduced them to possession was always a question of law under the particular facts of each case.

In this case the testimony is uncontradicted that when the land that was given to the wife by her father was sold, and when the personal property she received from her father's estate was sold, the money was turned over to the wife and she retained the possession thereof until it was invested in other lands, and when the trade for such other lands was rescinded and the money refunded to her, she retained the possession thereof until it was invested in the land in controversy.

The evidence in this case is not sufficient to show a reduction by the husband to his possession of the wife's money, so as to entitle him to the same under the rules of the common law. If, therefore, upon a trial anew of this case, the facts should appear as they now appear herein, the trial court should dismiss the bill. If, however, the facts appear otherwise than as they now appear, and if it should be shown by competent evidence that the husband had reduced the money of the wife to his possession prior to the passage of the Married Woman's act of 1875, and had invested it in a home-

stead, then the course above indicated as to setting aside the homestead in favor of the wife, by virtue of the conveyance of the homestead by the husband to the wife, and the sale only of the land that exceeded in area and value the statutory exemption for the wife, should be ordered and the proceeds thereof distributed between the wife and the plaintiff as above indicated.

For the foregoing reasons the judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith.

All concur.