**MEEKS LEASING COMPANY,**
Plaintiff–Respondent,

v.

**Robert A. YOUNG and Mary H. Young,**
Defendants–Appellants,

and

**J.R. and M.R. Investments, Inc., Morrison Supply, Inc., Dennis Elmore and Mark W. Michael, Defendants–Cross–Claimants–Respondents.**

No. 18740.

Missouri Court of Appeals,
Southern District.

July 18, 1994.

Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for defendants-appellants.

Christopher J. Stark, Springfield, for plaintiff-respondent.

Steven B. Jackson, Smith & Jackson, Lebanon, for defendants-cross-claimants-respondents.

SHRUM, Judge.

Robert A. Young and Mary H. Young (the Youngs) appeal from an order of the trial court entered April 8, 1993, denying their motions to review their homestead exemption claim and to set aside a sheriff's sale of their homestead. The sheriff levied on and sold the Youngs' real estate under an execution issued at the joint request of Meeks Leasing Company, J.R. and M.R. Investments, Inc., Morrison Supply, Inc., Dennis Elmore, and Mark W. Michael.

The dispositive issue presented is whether a homestead loses its exempt status under the homestead laws when its owner has not filed with the sheriff a "verified request" for the exemption as prescribed in § 513.445, RSMo 1986, and Rule 76.075. We hold that it does not. We reverse and remand with directions.

## FACTS

Meeks Leasing Company (Plaintiff) filed a mechanic's lien suit against the Youngs, owners of the real property in question. Plaintiff named other potential mechanic's lien claimants as additional defendants, specifically, J.R. and M.R. Investments, Inc., Morrison Supply, Inc., Dennis Elmore, and Mark W. Michael (collectively, Cross–Claimants). We glean from the record that Cross–Claimants filed pleadings in which they asserted their respective claims against the Youngs.[1] Acting on a settlement stipulation, the trial court entered a money judgment against the Youngs in favor of Plaintiff and Cross–Claimants on their respective claims. The trial court in its judgment found no priority among the various judgment liens nor did it order the real estate sold to satisfy the judgments.

On February 16, 1993, Plaintiff and Cross–Claimants asked the sheriff to levy upon the Youngs' real estate, describing in their request three acres that encompassed "the residence located on the ... described tract." Acting upon their request, the sheriff levied on the land and scheduled the sale of it for March 23, 1993, at 1:30 p.m. On March 5, 1993, the Youngs served upon the sheriff their written but unverified "Notice of Claim of Homestead." Citing § 513.475, they specifically described and claimed as their homestead the land seized by the sheriff.

On March 22, 1993, the Youngs notified the sheriff that he had a duty in conducting the execution sale to see that "the property is sold at [its] market value to be determined by appraisal as set in statute." In another part of the notice, the Youngs advised that the judgment liens were inferior to deeds of trust on the land.

When told that the sheriff intended to go on with the sale as scheduled, the Youngs filed a motion on March 23 requesting that the trial court "grant a Stay of the Sale of Real Property until ... the issues before the court can be properly heard." Among the issues raised in their motion, the Youngs mentioned their homestead claim. They alleged that their interests would be unprotected if the sale were to be held on March 23, 1993, because "[t]he property has not been ... appraised."

The trial court failed to act favorably to the Youngs on their motion to stay. The sheriff then held the sale as advertised and sold the property to Cross–Claimants, they being the highest bidders.

The Youngs filed two post-sale motions. Their first motion, filed March 24, 1993, they entitled "Motion to Set Aside Execution Sale." In it the Youngs claimed that the land sold "was within the homestead exemption filed by [the Youngs], and therefore the execution is void."

The Youngs' second post-sale motion, filed March 26, 1993, they entitled "Motion for Review of Homestead Exemption." In it they alleged that (1) the property they claimed as their homestead consisted of an "occupied residential dwelling house"; (2) the sheriff sold the property without appraising

---

1. The pre-judgment pleadings are not before us.

it; and (3) the sale price "was within the homestead exemption allowed by statute, therefore, establishing fair market value at the time of sale." The Youngs asked that the trial court "certify the real property under levy by Sheriff as Homestead and exempt from execution as clearly defined and set out in statue [sic] 513.475."

The trial court held an evidentiary hearing on the Youngs' post-sale motions. Cross–Claimants, through their lawyer, appeared and participated in the hearing.[2] The status of the Youngs' real estate as their homestead was not an issue at the hearing. Instead, Cross–Claimants contended that the Youngs' homestead exemption claim was not "valid" because it was not verified. Thus, as the trial commenced, the following exchange occurred:

"THE COURT: ... The other motion is to review the homestead exemption, and it's my understanding that the question involved in ... that portion of the motion, is it's the position of the [Cross–Claimants] in this case, who have the judgments against Mr. and Mrs. Young, that since the motion for or notice of homestead exemption was not verified, then it's invalid and not enforceable; is that correct?

MR. SMITH [Cross–Claimants' lawyer]: Yes, Your Honor.... [T]hat is our intention."

During the presentation of the Youngs' testimony, the following occurred:

"THE COURT: [To Mrs. Young] [L]et's try to iron this out. It's my understanding it has been agreed by everyone here that you did have a right to file ... for the homestead, but it was not verified. So the position of the creditors is that it wasn't valid; is that correct?

MR. SMITH: [Lawyer for Cross–Claimants] That's our understanding, yes, Your Honor.

THE COURT: So there's no testimony needed on that. The records reflect what the homestead application states; is that correct?

MRS. YOUNG: That's correct."

At the conclusion of the hearing, the trial court denied the Youngs' motions, saying the "record shows that homestead exemption filed by [the Youngs] was not verified and therefore not valid since verification is jurisdictional." This appeal followed.

## DISCUSSION AND DECISION

In 1986 the legislature first added to § 513.445 the provision that a "judgment debtor may make claim for exemption by filing a verified request with the levying officer within twenty days after notice of the levy." Effective January 1, 1988, the Supreme Court adopted Rule 76.075. Containing language that closely tracks § 513.445, Rule 76.075 establishes a similar procedure that judgment debtors may follow to claim items as exempt from levy of execution.[3]

---

2. Plaintiff did not appear for the hearing, either by corporate officer, director, employee or attorney, nor did it file pleadings or otherwise enter its appearance in response to the Youngs' motions.

3. Pertinent parts of Rule 76.075 read:
   "(a) Within three days after an officer has levied an execution, he shall notify the person against whom the execution has issued that an execution has been levied, that certain property, if any, is exempt under sections 513.430 and 513.440.... The officer shall also generally state that there are certain exemptions under state and federal law that the judgment debtor may be able to claim with respect to the property levied upon and describe the procedure for claiming the property as exempt....
   (b) The judgment debtor may claim any exemption by filing a verified request with the levying officer within twenty days after notice of the levy.... Upon receipt of a verified

request, the levying officer shall notify the party requesting the execution forthwith that a claim of exemption has been filed. If the levy is in the form of a garnishment upon the judgment debtor's wages, no such notification is required. The party requesting the execution may object to any claim for exemption within six days of the filing of the verified request by filing a request for court review.
   (c) If a request for court review is not timely filed, the levying officer shall release from execution the items claimed as exempt by the judgment debtor. Regardless of whether a request for court review is timely filed and where the property involves a garnishment upon the judgment debtor's wages, the levying officer shall release from execution the items claimed as exempt by the judgment debtor to the extent required by law at the time the claim for exemption is filed. If a request for court review is timely filed and the property does not involve a garnishment upon the judgment debt-

Cross–Claimants rely on § 513.445 and Rule 76.075(b) to argue that the Youngs' homestead lost its exempt status because they did not file a "verified request" within twenty days after the levy. They urge a "common sense interpretation" of § 513.445 and Rule 76.075(b), which in their view means that these provisions are to be read as providing a mandatory procedure for claiming *any* exemption, including homestead, and, absent a timely filed verified request to claim it, a homestead exemption is lost. They point to reported cases that talk about "claiming" a homestead exemption and, relying on such language, they urge that we reject as illogical the notion that a homestead exemption is absolute and need not be claimed pursuant to § 513.445 and Rule 76.-075(b).

In contrast, the Youngs contend in their first point that the trial court misinterpreted and misapplied the law in finding that no valid homestead exemption existed. They assert that because the sheriff levied upon their homestead, the homestead statutes make that property absolutely exempt from attachment and sale. Pointing specifically to §§ 513.475, 513.480, and 513.485, and the case law interpreting those provisions, the Youngs insist that the homestead exemption is "self enforcing" and unaffected by either the 1986 version of § 513.445 or Rule 76.075. Finally, they argue that because the sheriff never followed the appraisal procedure prescribed by §§ 513.480 and 513.485 and, thus, failed to learn if there was surplus in value of the homestead to which Plaintiff and Cross–Claimants' judgment liens could attach, i.e., whether the homestead had value above the preexisting encumbrances plus the $8,000 homestead allowance, the sale "was without authority of law and absolutely void."

█ Missouri's homestead law provides that "[t]he homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of eight thousand dollars ... shall ... be exempt from ... execution." § 513.475(1), RSMo 1986. The next section reads:

or's wages, the exemption claim shall first be reviewed and determined by the court before

"Whenever an execution shall be levied upon the real estate of any person, or upon such part of the homestead as may be in excess of the limitation of value created in section 513.475, such person shall have the right to designate and choose the part thereof to which the exemption created in section 513.475 shall apply, not exceeding the limited value; and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall ... fix the location and boundaries of such homestead, and the sheriff shall then proceed with the levy of such execution upon the residue of such real estate as in other cases; and such proceedings in respect to the homestead shall be stated in the return upon such execution."

§ 513.480, RSMo 1986. Another part of the homestead law says that if a homestead is mortgaged "the value ... of such homestead shall be fixed as provided in [§ 513.480]." § 513.485, RSMo 1986.

Principles that have evolved through judicial interpretation of Missouri's homestead statutes include the following:

"The homestead is an estate sui generis. It is governed by the homestead law, can only be sold in pursuance to the provisions of that law, and is not subject to the general law.... The homestead law is a code unto itself, having for its purpose the safekeeping of the homestead for the householder ... by making it forbidden fruit to creditors."

*Karsznia v. Kelsey,* 262 S.W.2d 844, 846[5] (Mo.1953).

"Under our statute, when a homestead comes within its prescribed limits ... as to ... value ... it is absolutely exempt from attachment and sale ... for the payment of debts contracted after its acquisition by the homesteader; and it is wholly unnecessary ... that he in such case should claim it as exempt, for the law so declares it."

*Tapley v. Ogle,* 162 Mo. 190, 62 S.W. 431, 432 (1901). *See Karsznia,* 262 S.W.2d at 846.

the levying officer shall release the items claimed as exempt...."

"[T]he homestead law . . . expressly exempts the homestead from attachment or execution except as therein provided, and provides a manner which expressly excludes the sale of the remainder. . . . [T]he homestead law is remedial in its nature, and does not call upon the courts for any strained and unnatural construction in favor of the creditor. It establishes as an element of our policy a home in which our citizenship may take root, under the provisions of laws which work no harm to the creditor, and protects the ability of the debtor to pay."

*Ehlers v. Potter,* 219 S.W. 915, 917 (1920).

The language of §§ 513.480 and 513.485 and the procedures described therein closely track their predecessors which were interpreted as providing a procedure by which a sheriff could learn, before completing the levy, whether the real estate in question had value above the sum of existing mortgages, the homestead claim amount, and delinquent taxes or other superior liens. *Ehlers,* 219 S.W. at 917–18. *See Hyde v. Copeland,* 351 Mo. 580, 173 S.W.2d 684, 686–87 (1943). Accordingly, when a sheriff was asked to levy upon real estate that qualified as a homestead, he could not " 'proceed with his levy until he . . . ascertained, in the mode directed by the act . . . the value of the premises, and that they are beyond the limit protected against executions.' " *Karsznia,* 262 S.W.2d at 846 (quoting *Vogler v. Montgomery,* 54 Mo. 577, 584 (1874)). "[T]he lien of judgment did not attach to the surplus in value until ascertained by an admeasurement of the proper homestead. . . ." *Macke v. Byrd,* 131 Mo. 682, 33 S.W. 448, 450 (1895). *See Hyde,* 173 S.W.2d at 686–87 (held that judgment lien did not attach to land because the sum of the mortgage, unpaid taxes, and homestead value exceeded the value of the land.)

"In order to establish a homestead it is necessary that the householder not only own the property but that he occupy it as a homestead." *Lutz v. Kehr,* 333 S.W.2d 61, 63 (Mo.1960) (citing *Rouse v. Caton,* 168 Mo. 288, 67 S.W. 578, 579 (1902)). *See also Springfield General Osteopathic Hosp. v. West,* 789 S.W.2d 197, 204[8] (Mo.App.1990).

A fair reading of the trial court's statement in denying the Youngs' motions and its comments during the hearing is that the court was persuaded that the property was the Youngs' homestead and the only reason they did not prevail was the lack of verification. Evidence supporting such a finding of fact includes (1) Plaintiff and Cross–Claimants' levy request that the sheriff "[l]evy upon real property of [the Youngs]" using a description that encompassed "the residence," (2) the Youngs' "Notice" in which they described and claimed as their homestead the seized land, (3) Mrs. Young's statements at the hearing in which she admitted the lack of verification but reiterated the homestead claim, and (4) Smith's statement of belief (when read in the context of the court's questions to him) that the only problem with the homestead exemption was the lack of verification of the claim form, not the substance of the claim.

When, as here, the real estate seized is a homestead, our homestead law establishes that such property is absolutely exempt from attachment or levy, and the exemption is self-enforcing. *Karsznia,* 262 S.W.2d at 846; *Ehlers,* 219 S.W. at 917; *Tapley,* 62 S.W. at 432. The sheriff has a duty under the homestead statutes to have a homestead appraised to find out if it has value above mortgage liens and the exemption amount. *Karsznia,* 262 S.W.2d at 846; *Hyde,* 173 S.W.2d at 686–87; *Ehlers,* 219 S.W. at 917–18. As this was their homestead, the lien of the judgment did not attach to the Youngs' real estate until the surplus in value, if any, was learned by appraisal. *Macke,* 33 S.W. at 450. *See Hyde,* 173 S.W.2d at 686–87. In failing to recognize the self-enforcing nature of the homestead exemption, the trial court either erroneously applied the law, or erroneously interpreted the law, or both.

Even if § 513.445 and Rule 76.075 apply to homestead claimants—a finding that we need not and do not make—they only afford a procedure by which a judgment creditor may contest through a pre-sale hearing whether the property is a homestead as claimed. Contrary to the argument by Cross–Claimants and Plaintiff, § 513.445 and

Rule 76.075 do not mandate the loss of the exemption for want of a verified claim. The purpose of verification is to secure good faith in the averment that the land seized was a homestead. *Federated Mortgage and Investment Co. v. Jones,* 798 S.W.2d 719, 721[1] (Mo. banc 1990) (citing *Drury Displays v. Board of Adjustment,* 760 S.W.2d 112, 114 (Mo. banc 1988)). Cross–Claimants had the opportunity at the post-sale hearing to adduce evidence that the real estate seized was not a homestead, but they failed to do so. Plaintiff mounted no defense to the Youngs' post-sale motions. On appeal Cross–Claimants and Plaintiff make no claim of prejudice from the fact that the Youngs failed to verify their claim. Moreover, the record reveals an absence of prejudice. *See Federated Mortgage and Investment Co.,* 798 S.W.2d at 721. Instead, Cross–Claimants and Plaintiff insist that the homestead lost its exempt status solely because a verified claim for it was not filed with the sheriff. Our independent research fails to reveal authority that supports their argument.

■ We find that the trial court either misapplied or misinterpreted the law, or both, when it concluded that the Youngs' homestead lost its exempt status for want of a verified claim. Being homestead property, it was absolutely exempt from sale until the sheriff determined through appraisal whether there was equity, taking into account mortgages, liens, and exemption value. Based upon the principles of homestead law reviewed herein, we conclude that the sheriff's sale was without authority of law and was absolutely void. *See Ehlers,* 219 S.W. at 918[1]. *See Hyde,* 173 S.W.2d at 686–87.

We reverse and remand. We direct the trial court to set aside the sheriff's sale. Our decision on Point I makes a discussion of Point II unnecessary.

Reversed and remanded with instructions.

PARRISH, C.J., and MONTGOMERY, J., concur.