**In re Barbara Faye STANLEY, Debtor.**

**Bankruptcy No. 92–50127–ABF.**

United States Bankruptcy Court,
W.D. Missouri.

Aug. 5, 1992.

John Manring, Utz, Litvak, Summers, Powers & Manring, St. Joseph, Mo., for movant.

William Harrison Norton, Norton & Norton, P.C., Kansas City, Mo., for respondent.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This matter comes before the Court in connection with a motion for relief from the automatic stay filed by the First National Bank of Bethany ("the Bank"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (G), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

Debtor Barbara Faye Stanley was married to Robert L. Stanley in 1965. Mr. Stanley died on January 4, 1992. In 1976, Barbara and Robert Stanley acquired a tract of land, including a house, with $14,-000 lent to them by the Bank. The debtor has occupied that residence with her family ever since. From 1966 to 1985, Robert Stanley was partner in a farm partnership with his brother William Stanley. The debtor Barbara Stanley was not a member of that partnership. At the time such farm partnership was dissolved, both the assets and liabilities of the partnership were divided between the partners. As a result, Robert Stanley had certain obligations to the Bank in his own name. In addition, Robert Stanley and the debtor had their own obligations to the Bank which were separate and apart from the partnership obligations.

On or about July 5, 1988, Robert Stanley and debtor executed two notes in favor of the Bank. One note was in the amount of $267,000, to be secured by 780 acres of farmland. The homestead tract, consisting of 130 acres, was included in that 780 acres. The second note, in the amount of $100,000, was secured by livestock and machinery. The loan proceeds of $367,000 were used first to refinance a total of eight (8) notes in favor of the Bank, with a balance then due and owing of $362,110.84. An additional $5,627.03 of the proceeds was used to pay off an SBA mortgage on the 130 acre tract used as a homestead by the debtor. That left a shortfall of approximately $787.87, which was paid by Mr. Stanley at the closing. Of the $367,000, approximately $98,000 represented Mr. Stanley's share of the partnership's obligations. (Tr. of July 14, 1992 Hr'g at 25.)

The remainder represented personal obligations of the debtor and Mr. Stanley.

The July 5, 1988 refinancing had two purposes. First, it allowed the Bank to obtain an FmHA guarantee of a portion of the obligation. Second, such refinancing with the FmHA guarantee allowed the Stanleys to obtain a reduction of approximately 2 percent in the interest rate they were paying.

On March 3, 1992, the debtor filed for protection under Chapter 7 of the United States Bankruptcy Code. Thereafter, on March 10, 1992, the Bank filed a motion seeking relief from the automatic stay, which was taken up for hearing on May 26, 1992. It was at that time announced that the matter had been resolved, subject to the debtor making a claim for homestead exemption as to a portion of the real estate involved. Based on such announcement, the Court entered an Order granting the Bank relief from the automatic stay to allow foreclosure of its interest in certain real and personal property, but gave the debtor the opportunity to enforce whatever claims she may have pursuant to the Missouri homestead exemption, Mo.Rev.Stat. § 513.475 (1986). Debtor here seeks to have the homestead portion of such real estate protected from foreclosure as exempt property.

The debtor first contends that the note and deed of trust were not effective to pledge her homestead as security for the $267,000 obligation, because both such instruments were completely silent about any homestead interest of either the debtor or her deceased husband. According to the debtor, she did not know at the time she signed these documents that she was pledging her homestead as collateral for these obligations, and simply signed what her husband put in front of her. According to the debtor's counsel, Missouri law makes no mention of the specific method by which a person can transfer a homestead, and the courts should require that any transfer of a homestead interest be specifically recited in the documents. Next, the debtor contends that there was no consideration for the grant of the deed

of trust on the homestead, and that no fresh money was advanced to debtor on July 5, 1988. Finally, the debtor states that the Bank did not file any objection to the debtor's claimed homestead exemption within 30 days after the conclusion of the section 341 meeting of creditors, and, therefore, waived any right that it may have had to do so.

In response, the Bank contends first that the clear language of the Missouri homestead statute allows a husband and wife to convey their interest in a homestead if they do so jointly. With respect to the consideration issue, the Bank contends that adequate consideration did exist for the mortgage because the Bank at that time agreed to refinance the pre-existing obligations. In addition, a small portion of the note proceeds were paid out to the SBA to satisfy its mortgage on the tract. The Bank further contends that adequate consideration existed, because, as a result of the refinancing, the interest rate was lowered. Finally, the Bank contends that under Section 522 of the Bankruptcy Code there is no basis for the removal of a consensual nonjudicial lien on the real estate, and such lien is therefore enforceable.

## DISCUSSION

### I. TRANSFER OF THE DEED OF TRUST

Missouri's homestead exemption provides in relevant part as follows:

[N]othing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof.

Mo.Rev.Stat. 513.475(2).

In *Martin v. Lewis*, 244 S.W.2d 87 (Mo.1951), the court determined that where a wife joins with her husband in the execution of a deed of trust, it becomes a valid encumbrance upon the homestead property. *Id.* at 91. Thus, the Bank is correct in asserting that the statute allows a husband and wife to convey their interest in a homestead if they do so jointly.

■ The debtor's contention that the deed of trust was not effective because it was silent about the debtor's homestead rights finds no support in the statute or relevant case law. Nothing in Missouri law requires a lender to apprise a borrower of his or her homestead rights when the homestead is being pledged as security for the payment of an obligation.

## II. CONSIDERATION

■ Since a husband and wife's joint conveyance of a homestead as security is valid under Missouri law, it must now be determined whether there was sufficient consideration for such a conveyance in this case. At the time of the refinancing, the debtor and her husband were indebted to the Bank in the approximate amount of $362,110.84. The evidence shows that the debtor and her husband were paying between 13 and 14 percent interest on this amount. In addition, the debtor and her husband owed approximately $5,627.03 to the SBA, which at that time held a deed of trust on the homestead tract. The evidence indicates that the debtor and her husband sought refinancing for several reasons, including consolidation of a number of outstanding obligations to the Bank, payment and release of the SBA deed of trust, and reduction in the interest rate to be paid by the debtor and her husband. In return for its agreement to refinance, the Bank required the debtor and her husband to pledge certain property, including the homestead tract, as security for the payment of the refinanced loan balances.

The debtor contends that there was no consideration for her conveyance of the deed of trust on the homestead tract as security for the Bank. In *Miles Homes Div. of Insilco Corp. v. First State Bank of Joplin*, 782 S.W.2d 798 (Mo.Ct.App. 1990), the concept of consideration was described as follows:

The classic doctrine is that "the promise and the consideration must purport to be the motive each for the other, in whole or at least in part; it is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting."

*Id.* at 800–01 (citations omitted).

Similarly, one leading commentator, in explaining the modern "bargain theory" of consideration, states as follows: "Something is said to be bargained for 'if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.'" I E. Allan Farnsworth, *Farnsworth on Contracts*, § 2.2 at 63 (1990) (citations omitted). Under the bargain theory, "as long as part of what is given in exchange for a promise is consideration, it is immaterial that the rest is not." *Id.* at 64 (footnote omitted). There is no additional requirement that the consideration be labeled "adequate," "sufficient," or "valuable." *Id.* § 2.11 at 98.

In the present case, the debtor and her husband sought the Bank's agreement to refinance their obligations at a lower rate of interest, and to pay off the SBA, and in exchange therefore agreed to execute the promissory notes and deed of trust. Similarly, the Bank sought the debtor's (and her husband's) promise to repay the loan and grant of the collateral as security for such repayment in exchange for the Bank's agreement to refinance the outstanding obligations of the debtor and her husband. I find that sufficient consideration was present in this case to support the debtor's granting of the deed of trust in favor of the Bank.

## III. LIEN AVOIDANCE AND HOMESTEAD EXEMPTION

Section 522(*l*) of the Bankruptcy Code requires a debtor to file a list of property that the debtor wishes to claim as exempt from distribution to creditors. The trustee and creditors are afforded the right to object to the claimed exemptions within 30 days after the conclusion of the section 341 meeting of creditors. Fed.R.Bankr.P. 4003(b). Unless such an objection is filed, the property claimed as exempt by the debtor is exempt. 11 U.S.C. § 522(*l*).

The debtor in this case argues that the Bank waived its right to object to her homestead exemption by not filing a formal

objection to her claimed exemption within 30 days after the conclusion of the meeting of creditors. *See Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

■ Missouri law provides that up to $8,000.00 of a debtor's homestead shall be exempt from a creditor's execution. Mo. Rev.Stat. § 513.475(1). Where a debtor's homestead is subject to a deed of trust, however, the debtor is entitled to the homestead exemption only to the extent there is equity in the real estate, i.e., there must be value in the land after deducting the indebtedness secured by the deed of trust. *See Karsznia v. Kelsey,* 262 S.W.2d 844, 845 (Mo.1953). As discussed above, the debtor's claimed homestead in this case is subject to a properly executed deed of trust. The debtor's schedules indicate that the debtor has no equity in the real estate. Therefore, under Missouri law, the debtor is not entitled to claim an exemption in her homestead.

This, apparently, does not end the analysis. The Supreme Court in *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), determined that a trustee may not contest the validity of an exemption after the 30-day period, even if the debtor had no colorable basis for claiming the exemption. Thus, debtor might argue that no valid objection to the exemption claim was filed, so the homestead exemption must stand. I find first that a valid objection was filed, and second that in any event a valid exemption does not serve by itself to avoid a valid lien.

In *In re Young,* 806 F.2d 1303 (5th Cir. 1987), the debtor, an attorney, failed to list in his schedules monthly income he was receiving from an annuity as payment of fees under a structured settlement he had procured for his former clients. The trustee filed motions to have all annuity payments made to the trustee, and to have the debtor turn over all monthly payments he had received post-petition. In response to such motions, the debtor amended his Statement of Financial Affairs to include the annuity as personal property, but claimed it as exempt. Forty-four days la-

ter, and outside the Rule 4003(b) limitations period, the trustee filed objections to the debtor's claimed exemption. The debtor argued that the trustee's motion was not filed in a timely manner, and was, therefore, time barred.

The Fifth Circuit Court of Appeals explained that the basic purpose behind the 30-day limitations period in Rule 4003(b) is to ensure timely notice to debtors that the trustee or a creditor objects to their claimed exemptions. *Id.* at 1305. The Court refused to allow the debtor to invoke the protection of Rule 4003(b) when it was clear that the debtor was aware of the trustee's objections to the debtor's treatment of the annuity payments. Likewise, in *In re Grosslight,* 757 F.2d 773 (6th Cir. 1985), a creditor's failure to file a formal objection under Rule 4003(b) to debtor's exemption was not fatal where a separate proceeding seeking relief from the automatic stay as to the property claimed as exempt was filed within the 30-day limitations period of Rule 4003(b). *See also* 8 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 4003.04[2] at 4003-13 (15th ed. 1992).

■ In this case, it is clear that the debtor and her attorney were quite aware of the Bank's objection to the propriety of the debtor's exemption claimed under the Missouri homestead statute. The Bank filed its motion for relief from the automatic stay prior to the section 341 meeting of creditors, well within the 30-day limitations period of Rule 4003(b). In its motion, the Bank alleged that the debtor held no equity in the real estate in question, which would preclude the debtor from claiming the homestead exemption under Missouri law. The debtor's awareness that her claimed homestead exemption was at issue in this case may also be ascertained from the announcement made by the parties in open court on May 26, 1992, at which time the Court was informed that the matter had been resolved, and that the debtor would stipulate to modification of the automatic stay so as to allow the Bank to foreclose on its interest, subject to the debtor making a

claim for homestead exemption as to a portion of the real estate involved.

Based on the circumstances of this case, I find that the Bank's failure to file a formal objection to the debtor's claimed homestead exemption is not fatal. The evidence establishes that the debtor and her attorney were well aware that the debtor's claimed homestead exemption was at issue. The Bank's motion for relief from the automatic stay was sufficient in this case to constitute an objection to the debtor's homestead exemption.

 In addition, the Supreme Court's opinion in *Taylor* does not authorize a debtor to use an exemption claim for the purpose of avoiding properly executed liens on the debtor's property. Congress specifically addressed lien avoidance in 11 U.S.C. § 522(f), which provides as follows:

> **§ 522. Exemptions**
>
> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (a) a judicial lien; or
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f).

In effect, the debtor here is attempting to avoid the bank's lien by simply claiming the real estate as exempt. But the bank's lien against the debtor's real property is not of the type avoidable under section 522(f). In order to avoid a lien the property must first be exempt, and next the lien must be of a type described in such section. Therefore, even if the debtor had validly claimed the homestead as exempt, the bank's valid lien remains enforceable.

### CONCLUSION

For the reasons stated above, I conclude that the deed of trust in favor of the Bank is a valid and enforceable encumbrance upon the homestead tract. Therefore, the Bank's motion for relief from the automatic stay is sustained, even as to the homestead tract.

A separate Order consistent with this Memorandum Opinion will be entered this date.